IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


UNITED STATES OF AMERICA,

      Plaintiff,

v.                          Criminal Action No. 5:10CR45
                                              (STAMP)
RAYMOND R. POWELL,

      Defendant.


**MEMORANDUM OPINION AND ORDER
AFFIRMING AND ADOPTING REPORT AND
RECOMMENDATION OF MAGISTRATE JUDGE AND
DENYING MOTIONS TO SUPPRESS EVIDENCE AND STATEMENTS**

I.   Procedural History

On December 7, 2010, the defendant, Raymond R. Powell ("Powell"), was named in a two-count indictment charging him with possession of firearms by a prohibited person and possession of a stolen firearm. On January 7, 2011, the defendant filed a motion to suppress evidence and a motion to suppress statements. The government filed a single response in opposition to the motions.

United States Magistrate Judge James E. Seibert conducted an evidentiary hearing on the pending motion to suppress. On February 11, 2011, the magistrate judge entered a report and recommendation, recommending that the defendant's motions to suppress be denied. Upon submitting his report, Magistrate Judge Seibert informed the parties that if they objected to any portion of his proposed findings of fact and recommendation for disposition, they must file written objections within fourteen days after being served with a copy of the report. The defendant filed timely objections.

II.  Facts

On October 1, 2010, at 9:30 p.m., Travis Hocutt ("Hocutt") called 911.  Just before Hocutt called 911, he had been riding the free trolley in downtown Wheeling, West Virginia.  He told the 911 operator that he had been on the trolley with "the homeless kid that walks around with the red headed girl all around town." Hocutt stated that "this boy" worked for him for a few days and then Hocutt found that he had several charges against him.  Hocutt also told the 911 operator that the person was always in trouble. Hocutt informed the 911 operator that Powell was riding the trolley in a camouflaged military uniform and that the person (who was later identified as the defendant Powell) told the trolley driver that he was in the military.  Powell carried a gun, took the magazine out on the trolley and flipped the bullets around.  In addition to the gun, Hocutt said that Powell had a knife on his person.  Hocutt stated to the operator that Powell "freaked [him] out."  Hocutt identified himself twice in the call and stated that they both got off the trolley at the same time and that Hocutt's wife was watching Powell.  The 911 operator told Hocutt that he would send law enforcement officers to the area of his business.

The 911 operator then made the following dispatch:

> Dispatch to 7 anybody else for backup.  14th & Main by the bus station ah a homeless guy dressed up in camos, military just took the free trolley ride on the bus he did display a gun, took the clip out had ah was bouncing the bullets in the air.  Also has a big knife on him. . . .  10 4 it's the homeless guy that has the red hair.

2

Two patrol cars, each with two officers, responded and nearly simultaneously arrived to Powell's location. The law enforcement officers observed Powell walking south on Main Street in a normal manner. The four officers then exited their vehicles, drew their weapons, and told the defendant to lay face down on the pavement. When asked, the defendant put his hands behind his back. The officers asked Powell if he was carrying a firearm, to which he answered in the affirmative. The law enforcement officers told Powell not to move his hands. The officers then handcuffed Powell and patted him down. The officers found two firearms, a hunting knife, a magazine for a firearm and four holsters. The officers then asked Powell if he had a permit to carry a concealed weapon. Powell stated, "no." Powell was also asked whether he had a military identification. The law enforcement officers placed the defendant in a patrol car and took him to police headquarters. At the headquarters, the defendant was <u>Mirandized</u> and questioned.

### III. <u>Standard of Review</u>

Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court must conduct a <u>de novo</u> review of any portion of the magistrate judge's recommendation to which objection is timely made. As to those portions of a recommendation to which no objection is made, a magistrate judge's findings and recommendation will be upheld unless they are "clearly erroneous." <u>See</u> <u>Webb v. Califano</u>, 468 F. Supp. 825 (E.D. Cal. 1979). Because the defendant filed objections, this Court will undertake a <u>de novo</u> review as to those

portions of the report and recommendation to which objections were made.

## IV. Discussion

The Fourth Amendment to the Constitution of the United States ensures that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. This Amendment to the United States Constitution is applied to the states by the Due Process Clause of the Fourteenth Amendment. Mapp v. Ohio, 367 U.S. 643, 655 (1961). Reasonableness under the Fourth Amendment is tested under different levels of suspicion depending on the type of police-citizen encounter at issue. United States v. Brown, 401 F.3d 588, 592 (4th Cir. 2005). There are three types of police-citizen encounters: "(1) arrest, which must be supported by probable cause; (2) brief investigatory stops, which must be supported by reasonable articulable suspicion; and (3) brief encounters between police and citizens, which require no objective justification." Id. If law enforcement officers obtain evidence "as fruit of an unreasonable search or seizure, [that evidence] is generally inadmissible against a defendant." Id.

A law enforcement officer "may conduct a brief investigatory stop where the officer has reasonable suspicion that criminal activity may be afoot." United States v. Perkins, 363 F.3d 317, 321 (4th Cir. 2004) (citing Illinois v. Wardlow, 528 U.S. 119, 123 (2000)). These brief investigatory stops are commonly known as

4

Terry[1] stops.   Reasonable suspicion exists where an officer "point[s] to specific and articulable facts which, taken together with rational inferences from those facts, evince more than an inchoate and unparticularized suspicion or hunch of criminal activity."   United States v. Branch, 537 F.3d 328, 336 (4th Cir. 2008) (internal citations omitted).   The reasonable suspicion standard "is not readily, or even usefully, reduced to a neat set of legal rules, but, rather, entails common sense, nontechnical conceptions that deal with factual and practical consideration of everyday life."   United States v. Foreman, 369 F.3d 776, 781 (4th Cir. 2004).   Because of the standard, "courts must 'consider the totality of the circumstances' and 'give due weight to common sense judgments reached by officers in light of their experience and training.'"   United States v. Mason, 628 F.3d 123, 128 (4th Cir. 2010) (citing Perkins, 363 F.3d at 321).

At the time of the stop, law enforcement had the following facts: (1) Travis Hocutt, a local business owner, called 911 and identified himself as the caller; (2) Hocutt identified the defendant; (3) Hocutt stated that the defendant was a former employee that "had a bunch of charges and things like that on him;" (4) Hocutt identified the defendant's location; (5) Hocutt stated that the defendant was riding a trolley around town with a big knife, an exposed gun and magazine while handling bullets; and (6) the defendant's actions "freaked out" Hocutt.

---

[1]Terry v. Ohio, 392 U.S. 1 (1968).

In view of these circumstances, this Court finds that the law enforcement officers had reasonable suspicion to stop Powell and were justified in relying upon the tip. Hocutt was not an anonymous caller and Hocutt personally observed Powell's actions on the trolley. Hocutt's "basis of knowledge -- a contemporaneous viewing of the suspicious activity -- enhanced the tip's reliability." Perkins, 363 F.3d at 322 (citing Florida v. J.L., 529 U.S. 266, 270-72 (2000)). The officers confirmed important aspects of the tip prior to making the stop. Id. The officers found Powell exactly where Hocutt stated that Powell was located, wearing the military uniform while walking down the street.

The defendant contends that Hocutt's 911 call did not provide the law enforcement officers a sufficient basis for the stop. In situations such as this, where an informant's tip is crucial to the finding of reasonable suspicion, the tip must possess "sufficient indicia of reliability." Id. at 323. Here, the informant was known to law enforcement. In this situation, "an officer can judge the credibility of the tipster firsthand and thus confirm whether the tip is sufficiently reliable to support reasonable suspicion." Id.

In Florida v. J.L., 529 U.S. at 268, the Supreme Court found a Terry stop unconstitutional where the officer's sole reason for the stop resulted from an anonymous tip rather than officer observation. The court noted that the officers knew nothing about the informant. Id. In finding that there were insufficient

indicia of reliability, the court "focus[ed] in particular on the lack of information that would demonstrate the tipster's credibility or basis of knowledge."  Perkins, 363 F.3d at 324 (citing J.L., 529 U.S. at 271).  Unlike the factual situation in J.L., law enforcement here did not rely on a call made by an unknown informant from an unknown location.  Instead, Hocutt revealed his location and name.  He further stated that he had employed the defendant and was aware of the defendant's background. He told the 911 operator that he observed the suspicious conduct and that his wife continued to observe the defendant while he was on the phone.  Id.  This Court finds that the tip "carried sufficient indicia of reliability" to form part of the officer's reasonable suspicion, which was corroborated at the scene upon finding the defendant in the outfit described by Hocutt.

West Virginia Code § 61-7-11 provides that "[i]t shall be unlawful for any person armed with a firearm . . . to carry . . . such weapon in a way or manner to . . . threaten, a breach of the peace."  This Court notes that the suspicious activity here is "openly and readily observable" and that "predictive information" is not required for non-status crimes.  Id. at 325.  In this situation, where the informant's knowledge is derived from his eyewitness encounter, there is no need to verify that he possess inside information.  Id. (citing United States v. Wheat, 278 F.3d 722, 734 (8th Cir. 2001)).

In his objection to the magistrate judge's report and recommendation, the defendant argues that none of his conduct was illegal. He states that it is not against the law to possess a firearm on a public trolley; it is not against the law to possess a magazine for a gun; it is not against the law to possess a magazine for a gun while riding on a public trolley; it is not against the law to possess bullets for a firearm; and it is not against the law to possess bullets for a firearm while riding on a public trolley. The defendant then concludes that because there was no illegal actions, there was no criminal activity afoot and no basis for a Terry stop. The defendant here, like the defendant in Perkins, misunderstands the nature of the reasonable suspicion inquiry. Id. at 326. Reasonable suspicion of ongoing illegal activity is not required for an officer to make a Terry stop. The purpose of Terry "was to permit officers to take preventive action and conduct investigative stops before crimes are committed, based on what they view as suspicious-albeit even legal-activity." Id. While probable cause "looks for past or present illegalities," reasonable suspicion "grant[s] officers the ability to prevent future wrongdoing." Id. at 327.

Reasonable suspicion may still be found where a defendant's conduct "may be susceptible of an innocent explanation." Id. Both the Supreme Court and the Fourth Circuit have prohibited courts from engaging in "divide-and-conquer analysis" the defendant advocates this Court to use. Id. This Court may not "treat[] each

8

action by a defendant in isolation." Id. Officers are not required "to rule out all possibility of innocent conduct or to wait until criminal activity actually occurs before responding to a suspicious set of circumstances." Id. This Court acknowledges that it is legal to display guns. However, taking the defendant's display of the firearm in context with all of the facts, this Court finds that this is a situation where the legal activity is inconsistent with innocent conduct, which justified the officers' stop. See Wardlow, 528 U.S. at 125 (mentioning that while each act on its own may be innocent, taken together in context, the acts led to reasonable suspicion to investigate). Hocutt was "freaked out" by Powell's display of the gun, magazine, bullets, and knife. Hocutt employed Powell and knew that Powell had charges against him in the past. While possession of these objects is legal, loading a magazine with bullets on a public trolley in front of a former employer while wearing a military uniform and beret provides enough specific and articulable facts to justify a stop by law enforcement officers. See Perkins, 363 F.3d at 327 ("[T]he tip relayed, and the surrounding circumstances confirmed, dangerous and intimidating behavior that was inconsistent with innocent action."). Accordingly, this Court must deny the motion to suppress.

The defendant also filed a motion to suppress statements. He argues that the statements he made regarding having weapons on his person, whether he had a permit to carry concealed weapons, and whether he had a military identification should be suppressed. The

defendant argues that the questioning of the law enforcement officers violated <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966). A person is entitled to <u>Miranda</u>'s procedural safeguards when he or she is subjected to custodial interrogation. <u>United States v. Leshuk</u>, 65 F.3d 1105, 1108 (4th Cir. 1995). A person is in custody for purposes of <u>Miranda</u> "if the suspect has been formally arrested or if he is questioned under circumstances in which his freedom of action is curtailed of the degree associated with a formal arrest." <u>Id.</u> (internal citations omitted). The parties do not dispute that the defendant was in custody at the time he made the statements he seeks to suppress. However, <u>Miranda</u> warnings are not required when a person is questioned during a routine <u>Terry</u> stop. <u>Id.</u> Furthermore, this Court notes that the <u>Terry</u> stop in this case did not rise to the level of an arrest at the time the defendant made the statements. As long as the stop is brief, a complete restriction of liberty is valid under <u>Terry</u>. <u>United States v. Moore</u>, 817 F.2d 1105, 1108. Neither does the use of drawn weapons or handcuffing of suspects automatically convert the stop into a custodial arrest. <u>Id.</u> Because this Court has found that the officers here conducted a lawful <u>Terry</u> stop, the defendant's motion to suppress statements must be denied.

In his report and recommendation, the magistrate judge states that, if the stop here was not constitutional, the questioning would not constitute interrogation in the sense of requiring <u>Miranda</u> warnings to be read and that officers may ask limited

10

questions for purposes of officer and public safety.  The defendant
objects to this contention.  This Court agrees with the defendant,
at least in part.  Before engaging in this analysis, this Court
notes that its disagreement with this portion of the magistrate
judge's report and recommendation does not change the result of the
report and recommendation because of this Court's finding that the
officers executed a lawful Terry stop.

A suspect must receive Miranda warnings when he is subject to
custodial interrogation.  Leshuk, 65 F.3d at 1108.  As mentioned
above, it is uncontested that the defendant was in custody as his
freedom of action was significantly curtailed as he was ordered to
lay down on the ground.  Interrogation, for purposes of Miranda,
refers "to any words or actions on the part of the police . . .
that the police should know are reasonably likely to elicit an
incriminating response from the suspect."  Rhode Island v. Innis,
446 U.S. 291, 301 (1980).  However, the Supreme Court has carved
out exceptions to the general rule.  One such exception is for
public safety.  New York v. Quarles, 467 U.S. 649, 657 (1984).  The
Supreme Court concluded that this public safety exception was
needed in situations "where spontaneity rather than adherence to a
police manual is necessarily the order of the day."  Id. at 656.

In this case, three statements are at issue.  The first
statement involves whether the defendant had a firearm on his
person.  The officers here needed "to insure that further danger to
the public did not result from the concealment of the gun in a

public area." Id.  Accordingly, this statement falls outside of the need for Miranda warnings.  This Court finds, however, that the second and third statements at issue were not exempted by the public safety exception.  Whether Powell had a permit to carry concealed weapons and whether Powell had a military identification are not questions involving the threat to public safety which outweigh Miranda's safeguards.  These questions were not "prompted by a concern for the public safety."  Id.  For this reason, this Court respectfully disagrees with the magistrate judge that the statements regarding whether Powell had a permit to carry concealed weapons and whether Powell had a military identification did not constitute custodial interrogation.  However, because of this Court's finding that the officers executed a valid Terry stop, Miranda warnings need not have been given.

## V.   Conclusion

For the reasons set forth above, after a de novo review, this Court ADOPTS and AFFIRMS the report and recommendation of the magistrate judge.  The defendant's motion to suppress (Document No. 21) and motion to suppress statements (Document No. 22) are DENIED.

IT IS SO ORDERED.

The Clerk is directed to transmit a copy of this memorandum opinion and order to the defendant and to counsel of record herein.

DATED:    March 16, 2011

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE